## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AUTOTRAKK, LLC, | : | |
| | : | CIVIL ACTION NO. |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| AUTOMOTIVE LEASING | : | |
| SPECIALISTS, INC. t/a | : | |
| AMBASSADOR DEALER FUNDING, | : | |
| MICHAEL C. CAFFREY, and | : | |
| GEORGE STAUFFER, | : | |
| | : | JURY TRIAL DEMANDED |
| *Defendants*. | : | |

## <u>VERIFIED COMPLAINT</u>

NOW COMES, Plaintiff, AutoTrakk, LLC ("AutoTrakk"), by and through its attorneys, Rhoads & Sinon LLP, and files the within Verified Complaint, seeking legal remedies and equitable relief, as follows:

## The Parties

1.     The Plaintiff, AutoTrakk, is a Pennsylvania limited liability company with its principal place of business located at 1500 Sycamore Road, Suite 200, Montoursville, Pennsylvania 17754.

2.     AutoTrakk is the leading automobile leasing company specializing in financing customers with moderate to severe credit issues.

3.     Defendant, Automotive Leasing Specialists, Inc. t/a Ambassador Dealer Funding ("Ambassador"), is, upon information and belief, a Louisiana corporation with its principal place of business located at 4023 Ambassador Caffery Parkway, Suite 203, Lafayette, Louisiana 70503.

4.     According to Ambassador's website (alsdealerfunding.com), it is "a growing automotive finance company specializing in assisting dealers with sub-prime point of sale financing and purchasing bulk portfolios."

5.     Defendant, Michael C. Caffrey ("Caffrey"), is an adult individual residing at 402, Flora Springs Drive, Youngsville, LA 70592.

6.     Caffrey is a former AutoTrakk employee, and he is currently the President/CEO of Ambassador.

7.     Defendant, George Stauffer ("Stauffer"), is an adult individual residing at 500 Highland Terrace, Williamsport, Pennsylvania 17701.

8.     Stauffer is also a former AutoTrakk employee, and upon information and belief, he is currently employed by Ambassador as the Dealer Account Manager – Point of Sale and Portfolio Acquisition.

### Jurisdiction and Venue

9.     This action arises under various Federal and state laws, as described herein.  Jurisdiction is proper pursuant to 18 U.S.C. §§ 1030(g), 1836(c), 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367.

10.     Venue in this Judicial District is appropriate pursuant to 28 U.S.C. § 1391(c).

### Factual Background

11.     As noted previously, AutoTrakk is an automobile leasing company that specializes in financing customers with moderate to severe credit issues.

12.     To that end, and significantly, AutoTrakk is the owner of United States Patent No. 7,860,764 ("the '764 patent"), titled, "Method and System for Leasing Motor Vehicles to Credit Challenged Customers."

13.     The '764 patent was duly and legally issued by the United States Patent and Trademark Office on December 28, 2010, after a full and fair examination.  A true and correct copy of the '764 patent is attached hereto as **Exhibit A.**

14.    In addition to the '764 patent, AutoTrakk relies on various proprietary trade secrets and confidential information to remain competitive in the industry. These include, *inter alia*, marketing strategies, financial information, customer lists, operations processes, computer programs, program information, data sets, and various valuation tables and calculations.

15.    AutoTrakk, through its Policy Manual, notifies all employees of the duty not to disclose the proprietary trade secrets and confidential information to which they have access in connection with their employment with AutoTrakk.

16.    Stauffer began his employment with AutoTrakk on May 30, 2003. His last position with AutoTrakk was Vice President of Sales.

17.    Caffrey began his employment with AutoTrakk on September 1, 2010. Throughout his employment, Caffrey held the position of President.

18.    Both Caffrey and Stauffer, in connection with their employment with AutoTrakk, were privy to AutoTrakk's proprietary trade secrets and confidential information.

19.    Both Caffrey and Stauffer, in connection with their employment with AutoTrakk, signed forms acknowledging their receipt of AutoTrakk's Policy Manual. True and correct copies of these forms are attached hereto as **Exhibit B**.

20.    Further, on September 10, 2015, Stauffer signed a Confidentiality Agreement, wherein he promised, *inter alia*, to "not at any time disclose or use,

either during or subsequent to [his] employment, any information, knowledge, or data which [he] receive[s] or develop[s] during [his] employment which is considered proprietary by AUTOTRAKK, or which relates to the trade secrets of AUTOTRAKK." A true and correct copy of this Confidentiality Agreement is attached hereto as **Exhibit C**.

21.    Caffrey separated from his employment with AutoTrakk in or around December 2014.

22.    At some point after his departure from AutoTrakk in December 2014, but prior to or as of May 2015, Caffrey became the President/CEO of Defendant Ambassador.

23.    Stauffer, meanwhile, remained employed by AutoTrakk.

24.    At least as early as May 2015, Caffrey and Stauffer engaged in a series of communications wherein Caffrey requested, and Stauffer used, disclosed, and readily provided, AutoTrakk's proprietary trade secrets and confidential information to Ambassador so that it could develop a funding program similar (if not almost identical) to the one being used by Auto Trakk.

25.    The communications between Caffrey and Stauffer, many of which used AutoTrakk's own email system, clearly show that AutoTrakk's proprietary trade secrets and confidential information were being exploited by these two men solely to benefit Ambassador's "growing automotive finance" business.

26.    For example, Caffrey requested that Stauffer run a certain vehicle through AutoTrakk's program—using AutoTrakk's computer systems—so that he could assure himself of the accuracy of his own analysis.   Stauffer complied, and actually sent Caffrey a copy of the worksheet that was generated using AutoTrakk's program.   Stauffer also sent Caffrey a copy of AutoTrakk's 2016 Program Overview, stating: "Can't wait to see your Program."

27.    These communications between Caffrey and Stauffer continued for almost one year, until March 24, 2016, when Caffrey "rewarded" Stauffer by offering him an employment position with Ambassador as a Dealer Account Manager – Point of Sale and Portfolio Acquisition.

28.    Stauffer accepted this new position with Ambassador, but he did not tender his resignation from AutoTrakk until April 15, 2016.

29.    Two days before Stauffer resigned, he received an email from Caffrey attaching an outline of "stuff" with which to "keep busy."   One item on the outline directs Stauffer to "get" an underwriting manual, presumably from AutoTrakk.

30.    It is believed, and therefore averred, that Stauffer—at the behest of Caffrey or on his own volition—unlawfully retained and misappropriated various proprietary and confidential materials belonging to AutoTrakk.   Furthermore, based on the content of the email communications between Caffrey and Stauffer, it is believed, and therefore averred, that Caffrey also unlawfully retained and

misappropriated various proprietary and confidential materials belonging to AutoTrakk upon his departure from the company in December 2014.

31.    And now, Ambassador is actively soliciting business from customers of Auto Trakk (i.e. dealers) using a program that is a carbon copy of AutoTrakk's patented business method, and built on a foundation of Auto Trakk's proprietary trade secrets and confidential information. For purposes of comparison, true and correct copies of AutoTrakk's program, effective January 19, 2015, and Ambassador's program, effective June 1, 2016, are attached hereto as **Exhibit D**.

### Basis for Equitable Relief

32.    By virtue of their employment with AutoTrakk, both Caffrey and Stauffer are bound by a fiduciary duty of loyalty such that they are prohibited from disclosing AutoTrakk's proprietary trade secrets and confidential information to the detriment of AutoTrakk and/or for their own personal gain.

33.    If Defendants' misconduct (as described herein) is not preliminarily and permanently enjoined, Stauffer and/or Caffrey will disclose or inevitably disclose AutoTrakk's proprietary trade secrets and confidential information to Ambassador and various other individuals or entities during the course and scope of his/their employment with Ambassador, whether such disclosure is intentional or inadvertent, conscious or unconscious.

34. Moreover, as part of his Confidentiality Agreement with AutoTrakk [**Ex. C**], Stauffer specifically agreed that his use or disclosure of AutoTrakk's proprietary information and trade secrets "would cause irreparable injury" to AutoTrakk, and that he "consent[ed] to the order of an immediate injunction, without bond, from any court of competent jurisdiction, enjoining and restraining [him] from violating or threatening to violate" the Agreement.

35. Because of the irreparable nature of harm involved, AutoTrakk cannot estimate the pecuniary loss it will suffer as a result of Defendants' misconduct. Nevertheless, due to the invaluable nature of the interests involved, and the losses that AutoTrakk will suffer if Defendants are permitted to engage in the misconduct identified herein, such an amount, at the very least, easily exceeds $75,000.00.

36. Based on the unmistakable content of the communications between Caffrey and Stauffer, AutoTrakk is likely to prevail on the merits of its claim, and the entry of an injunction will serve to maintain the status quo throughout the duration of litigation. Moreover, the entry of an injunction will not detrimentally affect the public interest.

37. Pursuant to Fed. R. Civ. P. 65(c), AutoTrakk shall post bond in an amount and at a time deemed appropriate by this Court.

## COUNT I
## Patent Infringement
### (*Against Ambassador*)

38.     The foregoing averments are incorporated by reference as though fully set forth herein.

39.     Without license, permission, or authority granted by AutoTrakk, Ambassador has infringed and still is infringing on one or more claims of the '764 patent, literally or under the doctrine of equivalents.

40.     As a direct and proximate result of Ambassador's infringement, AutoTrakk has been, is being, and will be irreparably and monetarily damaged. If Ambassador's actions are not permanently enjoined, AutoTrakk will continue to suffer irreparable harm for which there is no adequate remedy at law.

41.     AutoTrakk respectfully requests that the Court enter a judgment as follows:

    A.     That Ambassador has infringed the '764 patent;

    B.     Awarding AutoTrakk damages, including enhanced damages, pursuant to 35 U.S.C. § 284 for Ambassador's infringement of the '764 patent, in an amount to be determined at trial, but in no event less than a reasonable royalty;

    C.     Awarding AutoTrakk pre-judgment and post-judgment interest to compensate AutoTrakk for the damages it has sustained;

D.   Preliminarily and permanently enjoining and restraining Ambassador and its officers, agents, employees, and those acting in privity with it, from further infringement of the '764 patent;

E.   Awarding AutoTrakk costs and disbursements for this lawsuit;

F.   Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding AutoTrakk reasonable attorney's fees, costs, and expenses; and

G.   Awarding AutoTrakk any further relief the Court deems just and proper.

**COUNT II**
**Misappropriation of Trade Secrets under 18 U.S.C. § 1836**
***(Against All Defendants)***

42.   The foregoing averments are incorporated by reference as though fully set forth herein.

43.   AutoTrakk owned and possessed certain confidential, proprietary, and trade secret information, as alleged above.

44.   This confidential, proprietary, and trade secret information relates to products and services sold, shipped and/or ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

45.    AutoTrakk has taken reasonable measures to keep such information secret and confidential.

46.    This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

47.    In violation of AutoTrakk's rights, Defendants misappropriated the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein.

48.    Defendants' misappropriation of the confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

49.    Defendants have not returned AutoTrakk's confidential, proprietary, and trade secret information.  On information and belief, if Defendants' conduct is not remedied, and if Defendants are not enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to AutoTrakk's detriment, AutoTrakk's confidential, proprietary, and trade secret information.

50.    As the direct and proximate result of Defendants' conduct as alleged herein, AutoTrakk has suffered and, if Defendants' conduct is not stopped, will

continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

51.     Because AutoTrakk's remedy at law is inadequate, AutoTrakk seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.   AutoTrakk's business is reliant on its business reputation and its ability to maintain and grow its customer base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

52.     AutoTrakk has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious misappropriation of its confidential, proprietary, and trade secret information through the improper and unlawful methods as alleged herein.

53.     AutoTrakk has been damaged by all of the foregoing and is entitled to an award of compensatory damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorney's fees.

## COUNT III
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g)**
*(Against Stauffer)*

54.     The foregoing averments are incorporated by reference as though fully set forth herein.

55. Stauffer, knowingly and with intent to defraud, accessed a protected computer for the benefit of himself and his current employer, Ambassador.

56. In doing so, Stauffer exceeded the authorization he was granted by accessing information for purposes not related to his job responsibilities as an employee of AutoTrakk.

57. In taking these actions, Stauffer violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and has caused losses to AutoTrakk in excess of $5,000 during a one-year period of time. AutoTrakk has, thus, been damaged as defined in the Computer Fraud and Abuse Act such that it is entitled to bring a civil cause of action under the statute and to seek civil damages pursuant to same.

58. AutoTrakk is entitled to injunctive relief in the form of a preliminary and permanent injunction that prohibits Stauffer and his current employer, Ambassador, from continuing to use the improperly accessed information obtained from AutoTrakk's computers.

59. AutoTrakk also seeks compensatory damages, including, but not limited to, lost profits, as a consequence of Stauffer causing a loss to AutoTrakk.

## COUNT IV
## Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 *et seq.*
### (*Against All Defendants*)

60. The foregoing averments are incorporated by reference as though fully set forth herein.

61.     As set forth above, Defendants are in the possession of valuable confidential and proprietary information and trade secrets concerning AutoTrakk's business, and such information and trade secrets are protected by the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5301 *et. seq.* ("PUTSA").

62.     As employees of AutoTrakk, Caffrey and Stauffer knew that the aforementioned confidential and proprietary information and trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

63.     Moreover, as alleged herein, Defendants obtained AutoTrakk's confidential and proprietary information through improper means.

64.     Upon information and belief, Defendants have used, or will inevitably use, the aforementioned confidential and proprietary information and trade secrets to their own benefit and to the detriment of AutoTrakk.

65.     Defendants' actions are willful, intentional, unprivileged, and malicious, thereby subjecting them to exemplary damages.

66.     As a result of the foregoing, AutoTrakk is entitled to compensatory damages in an amount yet to be determined pursuant to 12 Pa. C.S. § 5304(a), exemplary damages pursuant to 12 Pa. C.S. § 5304(b), attorneys' fees, expenses, and costs pursuant to 12 Pa. C.S. § 5305, and such other legal or equitable relief that this Court deems just and proper.

## COUNT V
## Breach of Fiduciary Duty of Loyalty
### (*Against Caffrey and Stauffer*)

67. The foregoing averments are incorporated by reference as though fully set forth herein.

68. By virtue of their employment with AutoTrakk, both Caffrey and Stauffer are bound by a fiduciary duty of loyalty such that they are prohibited from disclosing AutoTrakk's proprietary trade secrets and confidential information to the detriment of AutoTrakk and/or for their own personal gain, and they are bound by this duty of loyalty even after the separation of their employment.

69. As alleged herein, Caffrey and Stauffer knowingly and willfully breached the fiduciary duties that they owed to AutoTrakk.

70. As a direct and proximate result of Defendants' disloyalty and breach of their common law fiduciary duties, AutoTrakk has been and is being harmed. AutoTrakk is, therefore, entitled to compensatory damages in an amount yet to be determined and such other relief that this Court deems just and proper.

71. Defendants' actions are willful, intentional, unprivileged, and malicious, thereby subjecting them to punitive damages.

72. Because its remedy at law is inadequate, AutoTrakk seeks, in addition to damages, preliminary and permanent injunctive relief, enjoining Defendants,

and all those acting in concert or participation with them, from further improper conduct.

## COUNT VI
### Tortious Interference with Current and Prospective Business Relationships
### (*Against All Defendants*)

73. The foregoing averments are incorporated by reference as though fully set forth herein.

74. Defendants' actions, as set forth above, were and are intended to harm AutoTrakk by interfering with AutoTrakk's current and prospective business relationships.

75. Specifically, Defendants wrongfully and unlawfully obtained, and continues to retain, confidential information and trade secrets owned and developed by AutoTrakk.

76. Defendants have impacted or intend to impact AutoTrakk's ability to perform its business and cause current and prospective clients to conduct business with Ambassador, instead of with AutoTrakk, based largely, if not exclusively, on their use of and reliance on AutoTrakk's proprietary trade secrets and confidential information.

77. Defendants' actions were/are willful, intentional, unprivileged, and malicious, thereby subjecting them to punitive damages.

78.   As a result of the foregoing, AutoTrakk is entitled to compensatory damages in an amount yet to be determined, punitive damages, attorneys' fees, costs, and other such legal or equitable relief that this Court deems proper.

## COUNT VII
### Conversion
### (*Against Caffrey and Stauffer*)

79.   The foregoing averments are incorporated by reference as though fully set forth herein.

80.   Upon information and belief, Caffrey and Stauffer have unlawfully retained and misappropriated certain critical written and electronic records that are the exclusive property of AutoTrakk, including, but not limited to, an underwriting manual and various work materials.

81.   Defendants' actions constitute a deprivation of AutoTrakk's right to its personal property without any legal justification.

82.   AutoTrakk has been damaged as a result of Defendants' unlawful conversion and is entitled to compensatory damages and other such legal or equitable relief that this Court deems proper.

## Count VIII
### Unfair Competition
### (*Against All Defendants*)

83.   The foregoing averments are incorporated by reference as though fully set forth herein.

84.     Defendants, by their actions as set forth above, have engaged in unfair competition with AutoTrakk.

85.     Defendants' actions have been willful, intentional, and unprivileged, and have caused, and are continuing to cause, irreparable harm as well as monetary damage to AutoTrakk in an amount yet to be determined.

86.     As a result of the foregoing, AutoTrakk is entitled to compensatory damages in an amount yet to be determined, punitive damages, attorneys' fees, costs, and other such legal or equitable relief that this Court deems proper.

### Count IX
### Unjust Enrichment
### *(Against All Defendants)*

87.     The foregoing averments are incorporated by reference as though fully set forth herein.

88.     AutoTrakk, without its consent or authorization, has conferred a benefit on Defendants, who have used AutoTrakk's proprietary trade secrets and confidential information in furtherance of Ambassador's "growing automotive finance" business.

89.     Defendants have no right to use AutoTrakk's proprietary trade secrets and confidential information.

90. Nevertheless, Defendants have accepted and continue to accept the benefits of using AutoTrakk's proprietary trade secrets and confidential information.

91. It would be inequitable for Defendants to retain the benefits of their use of AutoTrakk's proprietary trade secrets and confidential information without payment for the value of same, which may by in whole or in part incapable of calculation.

### Count X
### Civil Conspiracy
### (*Against All Defendants*)

92. The foregoing averments are incorporated by reference as though fully set forth herein.

93. Defendants collectively acted with a common purpose to perform the unlawful acts as alleged herein and identified in Counts II through X.

94. The actions set forth herein constitute overt acts in furtherance of this common purpose.

95. As a result of Defendants' collective actions and common purpose, AutoTrakk has suffered, and will continue to suffer, irreparable harm as well as monetary damage in an amount yet to be determined.

## Prayer for Relief

WHEREFORE, AutoTrakk respectfully requests that judgment be entered in its favor and against Defendants as follows:

A.     The specific relief outlined in Count I (patent infringement).

B.     An award of damages as described or identified in each of the above claims in amounts to be determined at the time of trial.

C.     A preliminary and permanent injunction against Defendants, enjoining them from making use of AutoTrakk's proprietary trade secrets and confidential information, and directing the return of all of AutoTrakk's property.

D.     An award of punitive damages in an amount to be determined at the time of trial.

E.     An award of pre-judgment and post-judgment interest, attorney's fees, costs, and other expense incurred in this action.

F.     Such other and further relief as this Court deems just and proper.

**[SIGNATURE BLOCK FOLLOWS]**

Respectfully submitted,

RHOADS & SINON LLP


By:    *Dean Piermattei*
       Dean F. Piermattei
       PA I.D. No. 53847
       dpiermattei@rhoads-sinon.com
       Todd J. Shill
       PA I.D. No. 69225
       tshill@rhoads-sinon.com

       One South Market Square
       P.O. Box 1146
       Harrisburg, PA  17108-1146

       Phone: 717-233-5731
       Fax: 717-231-6600

*Attorneys for AutoTrakk, LLC*

## VERIFICATION

Marshall D. Welch III, Chief Executive Officer of AutoTrakk, LLC, deposes and says, subject to the penalties of 28 U.S.C. § 1746 and 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, that the facts set forth in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.

Marshall D. Welch III

Date: 9/20/2016